173 Cal.App.3d 773 (1985)
219 Cal. Rptr. 294
In re FATHOM K. et al., Persons Coming Under the Juvenile Court Law.
SEAN K., Petitioner,
v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY HUMAN SERVICES AGENCY, Real Party in Interest.
Docket No. G002826.
Court of Appeals of California, Fourth District, Division Three.
October 24, 1985.
*776 COUNSEL
Ronald Y. Butler, Public Defender, Carl C. Holmes, Assistant Public Defender, Richard Aronson and Sharon Petrosino, Deputy Public Defenders, for Petitioner.
No appearance for Respondent.
Adrian Kuyper, County Counsel, and James L. Turner, Deputy County Counsel, for Real Party in Interest.
OPINION
CROSBY, J.
The father of two legitimate children challenges a local juvenile court determination that dependency proceedings on their behalf should be litigated in Texas. The ruling was erroneous, and we direct issuance of a peremptory writ accordingly.

I
In October 1984, Sean K. resided in Orange County with his two preschool-age children. Their mother's petition for dissolution of marriage was then pending in Texas, and he had signed a written appearance in that action and waived service of process.
Several months later Sean K. was arrested for alleged sexual abuse of his girlfriend's infant son. His children were removed from the home, eventually to be temporarily placed with his mother; and dependency proceedings were instituted (Welf. & Inst. Code, § 300, subds. (a) and (d)). Coincidentally, on the same day Sean K.'s troubles began in this state, his wife independently signed an affidavit in Texas relinquishing her own parental rights and purporting to place the children with the Texas Department of Human Resources for adoption.
A Texas divorce decree was filed February 19, 1985. It acknowledged the mother's unrevoked relinquishment of parental rights, ordered the children placed with the Texas Department of Human Resources, and directed the father to pay child support. The following week, the court appointed the Grayson County Children's Protective Service, unit 036, as the children's managing conservator "until such time as the parents appear before the Court and a final hearing can be heard." The Texas courts followed with a warrant and writ of attachment for their production to a representative *777 of unit 036. At this time, they were living in Orange County with their paternal grandmother.
Based on the writ of attachment and warrant, our juvenile court scheduled a hearing to consider its jurisdiction to proceed on the dependency petitions. Sean K. testified he did not learn his former wife had relinquished her parental rights until after the divorce decree was entered. Oddly, the deputy county counsel appearing on behalf of the Orange County Human Services Agency, the entity which initiated the dependency proceedings here, took the position that this state lacked jurisdiction under the Uniform Child Custody Jurisdiction Act and all custody issues would have to be litigated in Texas. We disagree with this attempt to export what has now become a California social problem to Texas.

II
(1) The Uniform Child Custody Jurisdiction Act, which has been adopted in 49 states, is a comprehensive system to provide stability to the lives and foster the best interests of children in interstate custody matters. (2) The purposes of the act are codified and include the promotion of "secure family relationships" and "cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child." (Civ. Code, § 5150, subds. (1)(b) and (1)(d).)
(3) Generally, a child's "home state" is the proper jurisdiction to determine custody matters. It appears, however, these children have no "home state," as that term is defined in the act: The record does not indicate there were any interim custody orders while the Texas dissolution action was pending, and the children did not reside with a parent there or in California "for at least six consecutive months" before custody proceedings were initiated in either state. (Civ. Code, §§ 5151, subd. (5); 5152, subd. (1)(a).)
(4) Nevertheless, Civil Code section 5152 identifies three other conditions under which California has jurisdiction to determine child custody matters. Although any one is sufficient to confer jurisdiction, all three are met in this case:
First, the children are "physically present in this state and ... it [was] necessary in an emergency to protect [them] because [they] ... [were] otherwise neglected or dependent." (Civ. Code, § 5152, subd. (1)(c).)
(5) Second, this is the state where they "and at least one contestant[] have a significant connection [and] there is available [here] substantial evidence *778 concerning the [children's] present or future care, protection, training, and personal relationships." (Civ. Code, § 5152, subd. (1)(b).) Dependency proceedings were initiated here before the Texas court issued its dissolution decree and appointed that state's social service agency as the children's managing conservator. The children have but one remaining parent legally involved in their welfare; and he is living in this state, although he was, and apparently is, incarcerated. If reunification with their father is possible, it will best be accomplished through the efforts of an Orange County social services agency, not a Texas agency charged only with adoption arrangements.
(6) Third, it does not appear that Texas exercised jurisdiction "substantially in conformity with [the act]." (Civ. Code, §§ 5155, subd. (1); 5152, subd. (1)(d)(i).) Jurisdiction over the dissolution action flowed merely from wife's residence in that state. True, as part of the dissolution judgment, the court made a provisional order for the custody of the children of the marriage to unit 36; but their mother relinquished parental rights before the dissolution judgment was entered and after the children had already been residing for some four months in California with their father. They became temporary dependents of the Texas Department of Human Resources solely based on the noncustodial parent's action and without notice to the father or any determination of his parental fitness, although by its own terms the Texas order can never be final until he has an opportunity to be heard there. More to the point, however, the record does not reflect the Texas agency was ever contacted concerning the dependency proceedings here, much less that it might object to California's assumption of jurisdiction over the matter. Indeed, at oral argument, the deputy county counsel was unable to enlighten us as to the Texas agency's current views on the subject.
(7) Recognizing that more than one state may have jurisdiction in a custody dispute pursuant to Civil Code section 5152, section 5163, subdivision (1) provides an additional basis for assumption of jurisdiction by a state other than the one first rendering a custody decree: "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction." Section 5163 has recently been interpreted to confer jurisdiction in California where "contact with [the other state] had become [so] slight ... that [it] now lacked the prerequisites for subject matter jurisdiction under section 5152." (Daves v. Daves (1985) ante, pp. 97, 107 [218 Cal. Rptr. 879].) That is precisely the case here.
*779 The children are with a relative, their grandmother, in this state; but the juvenile court's order would remove them to a jurisdiction where no legal parent resides. California is highly supportive of family reunification, but a placement of the children outside the jurisdiction where their father is incarcerated will not serve that goal. What could be the purpose? No natural parent in Texas anxiously awaits their return; there they face only the prospect of foster homes and, perhaps, adoption. It is obviously not in the best interests of these children to be abandoned by this state's juvenile justice system. (Civ. Code, §§ 5150, 5152.)
The alternative writ is discharged. Let a peremptory writ issue directing the juvenile court to proceed with the dependency petitions.
Trotter, P.J., and Sonenshine, J., concurred.